[No. 52423–8. En Banc. August 6, 1987.]

*In the Matter of the Personal Restraint of*
IAIN CHRISTOPHER HEWS, *Petitioner.*

*John Henry Browne* and *Browne & Ressler,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Senior Appellate Attorney,* for respondent.

GOODLOE, J.—Iain Christopher Hews filed a personal restraint petition challenging the validity of his guilty plea. In an earlier decision, this court found that Hews had made a prima facie showing of constitutional error in the taking of his plea and remanded for a hearing on the circumstances surrounding the plea taking. *In re Hews,* 99 Wn.2d 80, 660 P.2d 263 (1983). On remand, the trial court found Hews to be presently incompetent, yet proceeded anyway with a hearing on the merits and denied the personal restraint petition. Hews appealed, and this court granted direct review. We affirm the trial court as modified herein.

This case is of long–standing origin. On October 18, 1969, 16–year–old Hews robbed John Vavricka outside of Jilly's Tavern in Montlake and shot him in the stomach. Vavricka later died from his wound. Following a decline hearing, Hews was charged in superior court with first degree felony murder. Plea negotiations ensued. On March 13, 1970,

Hews pleaded guilty to second degree murder. The amended information alleged that Hews "willfully, unlawfully and feloniously shot at" the victim "with a design to effect [his] death". Report of Proceedings, at 20.

At the plea hearing, the court asked Hews if he was aware that he was accused of intending to kill someone. Hews did not specifically answer whether he understood the accusation and denied that he intended to kill. Hews then described the robbery and killing for the trial court. Hews' attorney orally assured the court that his client understood both the original charge and amended charge against him. The court concluded:

> From the statement [Hews] has made and from the testimony that I have heard from the doctor I am satisfied that he knows what he is charged with and that he knows what took place and that what took place did in fact amount to Murder in the Second Degree, so that if he chose to plead guilty to it it is because he is guilty of it as a matter of fact and this is what I must insist upon in order to do my job.

*Hews,* at 83 (entire exchange contained in *Hews,* at 82–84).

Following this colloquy, the court allowed the filing of the amended information. Hews' attorney acknowledged receipt of a certified copy of the amended information and waived its reading, upon satisfaction "that the Defendant understands the substance of the charge". *Hews,* at 84. Upon being informed of the rights he would be waiving by entering a plea of guilty, Hews pleaded guilty to the charge of murder in the second degree. *Hews,* at 84.

In October 1981, Hews, represented by new counsel, filed a personal restraint petition challenging his guilty plea. This court reviewed the petition and held that Hews had "submitted a prima facie case demonstrating that his plea was constitutionally invalid." *Hews,* at 88. Because the record was inadequate to make a final determination of this issue, the court remanded the case to Superior Court for a hearing on the merits. To prevail at this hearing, we held Hews would have to show "actual prejudice" in that he did

not understand the requisite elements of the crime or that his conduct satisfied those elements. *Hews,* at 88.

Around this time, Hews' new attorney apparently began to have grave doubts as to his client's competency. On the basis of expert reports, the prosecutor agreed that Hews was unable to assist counsel in the personal restraint proceeding.[1] Hews' attorney therefore moved that the proceedings be stayed on the ground of Hews' incompetency and that Hews be civilly committed, as it was unlikely that he would become competent within the foreseeable future. The State objected to this suggestion and moved instead to dismiss and to appoint a guardian. The State argued that RCW 10.77, on which petitioner's counsel based the motion for a stay, was inapplicable to civil proceedings such as collateral attacks upon convictions. The trial court issued a finding of fact and conclusion of law that Hews was incompetent to assist counsel and would not become competent within the near future. Nevertheless, the court appointed Hews' mother to act as his guardian in this proceeding and went on to decide this case on the merits.

The trial court held an evidentiary hearing over Hews' objections at which Hews' former attorney described the plea negotiations in which he had engaged for Hews. Counsel said it was obvious to him from the outset that the State had an open and shut case of first degree felony murder. Counsel testified that he was extremely pleased with the State's offer to accept a plea of second degree murder and thought it important for Hews to agree to the plea quickly before his mental condition deteriorated or the prosecutor withdrew the offer. Counsel could recall no specific discussion with Hews regarding the intent requirement of second degree murder. However, he testified that they went over both the original information and the amended information

---

[1] According to the reports, Hews has been in intensive, generally inpatient, psychiatric care for almost all of the years since his arrest. He is actively psychotic and his behavior is occasionally self-destructive. He has very little, if any, understanding of the present proceedings.

before Hews pleaded guilty. Moreover, counsel noted in his file that they had discussed the available alternatives 3 days before the plea entry and that Hews understood it would be in his best interest to plead to the amended second degree murder charge.

In April 1985, the trial court entered findings of fact reflecting the attorney's testimony. The court found that petitioner had failed to prove by a preponderance of the evidence that he was actually prejudiced by his entry of the guilty plea. However, the court continued the matter pending further psychiatric evaluation on the likelihood of future competency, noting that "because of [Hews'] incompetence he has been unable to present all of the evidence which might be available to him." Report of Proceedings, at 219. Following such evaluations, the court denied the personal restraint petition. Hews now appeals directly to this court.

This case presents two issues:

1. May a personal restraint petition challenging the validity of a guilty plea be decided on the merits if the petitioner is incompetent?

2. If so, has Hews met his burden of showing actual prejudice in the taking of his plea?

We answer the first question in the affirmative and the second in the negative. We moderate our holding with the observation that if Hews should become competent in the future, and if his competency results in new evidence concerning the validity of his guilty plea, he will be eligible to bring a new personal restraint petition. RAP 16.4(d).

I

On appeal, neither party challenges the finding of incompetency; at issue is what action the court should take if a personal restraint petitioner is not able to comprehend the proceedings or assist his attorney. Hews contends that the case should have been stayed until such time as he regains competence. In the interim, Hews argues he should be removed from prison and committed in a civil institution.

The State, in turn, contends that post–conviction proceedings may continue despite the prisoner's incompetency. The State argues that the due process considerations which preclude subjecting an incompetent defendant to a criminal trial do not apply in post–conviction proceedings.

The only times this court has addressed the question of whether competency is required for post–conviction proceedings have been in the context of parole and probation revocation proceedings. In *State v. Campbell,* 95 Wn.2d 954, 632 P.2d 517 (1981), we held that a probation period was tolled while the probationer was incompetent and committed in a mental institution, on the ground that while committed the probationer was beyond court supervision:

> During the period defendant was committed to the mental hospital for determination of incompetency, he was beyond the supervision of the court since one has a fundamental right not to be tried, convicted or sentenced while incompetent.

*Campbell,* at 957 (citing RCW 10.77.050). This reasoning would seem to imply that there can be no probation revocation proceeding while a probationer is incompetent. *Accord, Sailer v. Gunn,* 548 F.2d 271, 274 (9th Cir. 1977). However, we subsequently held in *Pierce v. Department of Social & Health Servs.,* 97 Wn.2d 552, 560, 646 P.2d 1382 (1982) that due process does not require a convict to be competent at parole revocation proceedings. This holding was based in part on the court's conclusion that incompetency is itself a condition which the Board of Prison Terms and Paroles must consider in determining whether a parolee should be integrated into society. *Pierce,* at 556–57. The court also noted that because a parolee's incompetence would threaten his successful rehabilitation and could increase the likelihood of further antisocial acts, "the State's interest in proceeding against an incompetent parolee is very strong." *Pierce,* at 559.

The discrepancy between *Pierce* and *Campbell* suggests that this court has not resolved the question of competency requirements in post–conviction proceedings. We need not

resolve the discrepancy at this time, however, because we find that the parole and probation revocation proceedings in *Pierce* and *Campbell* are fundamentally different from the personal restraint proceeding at hand. We believe there is greater reason to proceed despite incompetency in the context of a personal restraint petition.

■ The rule that an incompetent cannot be subject to a criminal trial stems from due process and fairness considerations. *See Drope v. Missouri,* 420 U.S. 162, 171–72, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1975). Whereas these considerations may mandate a stay of parole or probation revocation proceedings where the subject is incompetent, we believe these considerations weigh differently in the context of personal restraint petitions. To begin, we observe that the parolee and probationer are not involuntarily confined and are subject only to limited restraints. The personal restraint petitioner, by contrast, remains incarcerated and faces the mere "possibility" of release. *Cf. Greenholtz v. Inmates of the Neb. Penal & Correctional Complex,* 442 U.S. 1, 11, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979). A prison inmate, although not stripped of all constitutional protection, has a lesser liberty interest than a probationer or parolee. *Greenholtz,* at 9–11; *Wolff v. McDonnell,* 418 U.S. 539, 555–60, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974). Accordingly, due process standards are less stringent with respect to the prison inmate. *Greenholtz,* at 9–11; *Wolff,* at 560.

A second difference stems from the fact that the State does not proceed against a personal restraint petitioner; the petitioner initiates the proceeding. The fairness concerns that prevent a court from trying, convicting or sentencing an incompetent defendant are less acute when the incompetent is not being involuntarily "subjected" to a criminal proceeding. *Cf. Drope,* at 171; *Sailer,* at 274. Indeed, in the personal restraint context, fairness considerations direct that a court *should* proceed despite the petitioner's incompetency. Adoption of Hews' proposed rule that a court may not decide a personal restraint petition when the petitioner

is incompetent would severely impair the rights of those incompetents whose best interests would be served by allowing a personal restraint petition. *Cf.* RCW 7.36.020 (providing for writs of habeas corpus to be granted in favor of parents, guardians and certain others "to enforce the rights, and for the protection of infants and incompetent or disabled persons"). If, for example, an incompetent prisoner sought to collaterally attack a jury verdict on the ground that he or she had been incompetent to stand trial, it would hardly be fair to prevent a court from acting on his or her claim.

Based on the above reasoning, we hold that petitioner's incompetency does not prevent a court from deciding a personal restraint petition. We believe any different conclusion would unfairly restrict the rights of those incompetents who seek to petition for collateral relief. We reject Hews' proposed alternative rule that would allow an incompetent personal restraint petitioner the choice of whether or not to proceed. An incompetent is in no position to waive his or her right to be competent at any proceeding where competency is required. *Pate v. Robinson,* 383 U.S. 375, 384, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966).

We are aware of the disadvantages confronting an incompetent seeking to bring a personal restraint petition. Our previous decision in this case instructed the trial court to determine the validity of Hews' guilty plea based on considerations including Hews' knowledge of his constitutional rights and subjective awareness as to the relevant law and facts at the time of the plea entry. *Hews,* at 89 n.2. Clearly, Hews' ability to provide the trial court with this information would have been improved had he presently been able to understand the proceedings, recall and coherently relate the pertinent events and adequately assist his counsel. We recognize that a prisoner's ability to assist counsel and meaningfully participate is of crucial importance in a proceeding challenging a guilty plea. This is particularly true given that one challenging a plea has the burden of proving actual prejudice. *See Hews,* at 88. Nev-

ertheless, we must fashion a rule which accommodates these considerations with our broader concern of allowing incompetents to bring personal restraint petitions. We mitigate the potential harshness of our result by observing that Hews will have the opportunity to renew his collateral plea attack should he later become competent and, as a result thereof, have available new evidence which creates a reason to question our present disposition of his petition. *See* RAP 16.4(d).

RAP 16.4(d) provides the authority for such a renewal. RAP 16.4(d) provides that "[n]o more than one [personal restraint] petition for similar relief on behalf of the same petitioner will be entertained without good cause shown." In construing a closely worded federal statute, 28 U.S.C. § 2255 (providing a motion procedure for vacating sentences), the United States Supreme Court has held that a determination on a prior collateral relief petition will preclude determination of a subsequent relief petition only if:

> (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Sanders v. United States,* 373 U.S. 1, 15, 10 L. Ed. 2d 148, 83 S. Ct. 1068 (1963). In elaborating on this test, the Court further observed that where an evidentiary hearing has been less than complete, "the ends of justice" can only be served by permitting a successive petition, although based on the same legal ground. *Sanders,* at 16–17, *cited with approval in In re Taylor,* 105 Wn.2d 683, 688, 717 P.2d 755 (1986); *see also Townsend v. Sain,* 372 U.S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745 (1963); *Price v. Johnston,* 334 U.S. 266, 287–93, 92 L. Ed. 1356, 68 S. Ct. 1049 (1948). *Sanders* was adopted with approval in this court in *In re Haverty,* 101 Wn.2d 498, 503, 681 P.2d 835 (1984), as a basis for construing RAP 16.4(d). Based on our reading of *Sanders* and accompanying cases, we conclude that if Hews' later becomes competent and this competency results in sub-

stantial new evidence relating to the circumstances sur- rounding the entry of his guilty plea, then the "ends of jus- tice" will require that he be permitted to renew his personal restraint petition.

 This case is somewhat unusual in that the relief petitioner seeks will not necessarily make him better off. If we were to conclude, as Hews advocates, that a court may not decide a personal restraint petition while a petitioner is incompetent, Hews would reap no real benefit unless we were to also hold that an incompetent petitioner must be released from prison until competency is regained. We reject as completely meritless Hews' argument that his incompetency entitles him to be transferred into civil com- mitment. There is no constitutional or inherent right of a convicted prisoner to be released before the expiration of a valid sentence. *Greenholtz*, at 7. A personal restraint peti- tion is a collateral attack upon a judgment; the judgment remains in effect until such time as it is set aside. *State v. LaBeur*, 33 Wn. App. 762, 764, 657 P.2d 802 (1983).

## II

Since we hold that the trial court was authorized to decide the personal restraint petition despite Hews' incom- petency, we must now address whether the trial court erred in upholding Hews' guilty plea. In our prior review, we held that Hews had submitted a prima facie case of constitu- tional error in the taking of his plea. The prima facie showing stemmed from the fact that at the plea taking Hews expressed confusion on the intent element of second degree murder:

> Without question the trial court informed Hews of the element of intent necessary for second degree murder but it was at this point that acceptance of the plea went awry. Hews stated specifically: "I didn't intend to kill anybody". At this juncture it became evident Hews was confused whether his conduct satisfied the critical ele- ment of intent.

*Hews,* at 88. We concluded that on remand Hews had the burden of proving "actual prejudice" in that, more likely

than not, his plea was constitutionally invalid. *Hews,* at 89. More specifically, he had the burden of proving that he did not possess the requisite understanding of the law in relation to the facts. *Hews,* at 87 (citing *McCarthy v. United States,* 394 U.S. 459, 466, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969)); *see also Henderson v. Morgan,* 426 U.S. 637, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976). We summarized the minimal requirements for a valid plea as follows: "[A]n accused must not only be informed of the requisite elements of the crime charged, but also must understand that his conduct satisfies those elements." *Hews,* at 88.

Neither party to this appeal squarely addresses the criteria we set out in our previous *Hews* decision. The State instead seeks to uphold Hews' plea under a seeming exception to the *Hews* rule which this court has occasionally employed in limited plea bargain cases. This seeming exception was first expressed in *State v. Majors,* 94 Wn.2d 354, 616 P.2d 1237 (1980), in which we upheld a plea of guilty to a reduced charge of second degree murder with a habitual criminal finding, even though the defendant did not have two "prior" convictions to support that finding. The court in *Majors* employed what is often referred to as a "benefit of the bargain" analysis when it observed that there is "no reason why a defendant who agrees to be designated a habitual criminal *should not be held to his bargain*", at least where there was some benefit to the defendant in agreeing to the bargain. *Majors,* at 358. More recently, in *In re Barr,* 102 Wn.2d 265, 267, 684 P.2d 712 (1984), we employed a similar analysis in upholding a bargained plea to indecent liberties where the defendant and everyone else involved were confused as to the actual age of the victim and the age element of indecent liberties. The *Barr* court reasoned that the choice to plead to the lesser charge was voluntary because it was "based on an informed review of all the alternatives before the accused." *Barr,* at 270. We found it sufficient under the facts of that case that the defendant understood the consequences of his plea bargain and the trial court ascertained a factual basis for the

two original statutory rape charges. *Barr,* at 270. We observed no constitutional error in the fact that the defendant was confused as to the precise elements of the lesser charge of indecent liberties to which he ultimately pleaded.

The State argues that *Majors* and *Barr* support the trial court's ruling in this case. The State would have us construe these two cases to hold that a defendant need not be aware of the nature of the charge to which he ultimately pleads or understand that the facts he admits to constitute that offense. Thus, the State argues that Hews' plea was voluntary regardless of whether he understood that second degree murder has the critical element of intent. The State posits that the fact Hews understood that pleading to second degree murder would result in a lesser minimum term was sufficient to show his plea was based on informed choice. We reject this interpretation. The State's reading of *Barr* and *Majors* would render our prior decision in *Hews* meaningless. *Hews* held that a plea is not voluntary within due process requirements unless the defendant understands the requisite elements of and necessary facts supporting the charge to which he pleads. *Hews,* at 87. Adopting the State's interpretation of *Barr* would require us to effectively overrule *Hews* by implying that so long as one receives one's "benefit of the bargain", a full understanding as to the nature of the ultimate charge is not required. *Barr* did not overrule *Hews,* and we decline to do so now.

Furthermore, the State's interpretation of *Barr* and *Majors* fails to comport with constitutional requirements. Due process requires that a guilty plea be knowing, voluntary and intelligent. *Hews,* at 87; *Henderson,* at 644–45; *Boykin v. Alabama,* 395 U.S. 238, 241–44, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). A plea is not voluntary in the constitutional sense unless the defendant has adequate notice and understanding of the charges against him. *Henderson,* at 645 & n.13; *see also Smith v. O'Grady,* 312 U.S. 329, 334, 85 L. Ed. 859, 61 S. Ct. 572 (1941). Understanding of the original charge is not alone sufficient; where the charge

encompasses lesser included offenses, the defendant must understand the "essential elements of the charge *to which he pleads guilty*". (Italics ours.) *McCarthy*, at 467 n.20. The United States Supreme Court has occasionally employed a benefit of the bargain type analysis in upholding guilty pleas which were based on a defendant's informed review of all the alternatives. *See, e.g., North Carolina v. Alford*, 400 U.S. 25, 31, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970); *Boykin*, at 242. Yet these holdings relied on the fact that the pleas were fully intelligent and voluntary. *Alford*, at 31; *see also Henderson*, at 648 n.1 (White, J., concurring). In *Alford*, for example, the Court held that a plea to a lowered charge of second degree murder was not invalidated by a defendant's protestations of innocence because the plea represented a knowing, voluntary and intelligent choice among alternatives. *Alford*, at 37–38. In *Alford*, the defendant acknowledged that his counsel had informed him of the difference between first and second degree murder. There was no contention that Alford did not understand the nature of the charge to which he ultimately pleaded. *See Alford*, at 28–29.

While the State's interpretation of *Barr* is inadequate, Hews offers little in the way of a viable alternative. In his brief to the trial court, Hews sought to distinguish *Barr* on the ground that he, unlike the defendant in *Barr*, had "specifically denied" a crucial element of the pleaded crime. It is true that Hews, when queried in court, specifically denied the requisite element of intent. Yet as *Alford* makes clear, a denial of guilt does not alone invalidate an otherwise voluntary and intelligent guilty plea. *Alford*, at 37–38; *accord, State v. Newton*, 87 Wn.2d 363, 371–73, 552 P.2d 682 (1976). Arguably, Hews' equivocation on the stand suggests a lack of factual basis for the entering of a guilty plea to second degree murder. In *Alford*, for instance, the existence of a strong factual basis for the pleaded charge was an important factor in indicating that the plea was voluntarily and intelligently entered. *Alford*, at 28, 38 & n.10. The problem with Hews' argument is that the establish-

ment of a factual basis is not an independent constitutional requirement, and is constitutionally significant only insofar as it relates to the defendant's understanding of his or her plea.[2] *See Barr,* at 269; *United States v. Timmreck,* 441 U.S. 780, 60 L. Ed. 2d 634, 99 S. Ct. 2085 (1979); *Edwards v. Garrison,* 529 F.2d 1374, 1376 (4th Cir. 1975), *cert. denied,* 424 U.S. 950, 47 L. ED. 2d 355, 96 S. Ct. 1421 (1976); *Freeman v. Page,* 443 F.2d 493, 497 (10th Cir.), *cert. denied,* 404 U.S. 1001, 30 L. Ed. 2d 554, 92 S. Ct. 569 (1971); *cf.* CrR 4.2(d); Fed. R. Crim. P. 11. *United States v. Johnson,* 612 F.2d 305, 309 (7th Cir. 1980) helps to clarify this point:

> The Constitution does not require the establishment in all cases of a factual basis for a guilty plea, *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), but it does require that a plea be voluntary, *Henderson v. Morgan,* 426 U.S. 637, 644–45, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). Failure to establish a factual basis is likely to affect voluntariness. *Cf. Carreon v. United States,* 578 F.2d 176, 179 (7th Cir. 1978). This is so because some information about the facts is necessary to an assessment of whether the accused understood "the law in relation to the facts," *McCarthy v. United States,* 394 U.S. at 466, 89 S.Ct. at 1171, and was able to appreciate "the nature of the charge against him," of which he was entitled to "adequate notice," *Henderson v. Morgan,* 426 U.S. at 645 n.13, 96 S.Ct. at 2257.

*Accord, In re Keene,* 95 Wn.2d 203, 209–13, 622 P.2d 360 (1980). At most, therefore, Hews' denial of intent is relevant only to the extent it may suggest he did not possess an adequate understanding of the law in relation to the facts; it is not a sufficient ground by which to distinguish *Barr.*

A more appropriate way to explain *Barr* in light of our earlier *Hews* ruling is to recognize that the plea in *Barr* suffered from a mere *technical infirmity*. The defendant in

---

[2]The establishment of a factual basis is *procedurally* required. *See* CrR 4.2(d); Fed. R. Crim. P. 11. However, as such, it is not a proper subject of collateral attack. *Barr,* at 269; *United States v. Timmreck,* 441 U.S. 780, 60 L. Ed. 2d 634, 99 S. Ct. 2085 (1979).

*Barr* erroneously believed that the victim was 14 years old and that the crime of indecent liberties encompassed victims of 14 years *or* less. *Barr,* at 267. In fact, the crime required that the victim be *under* 14, and the defendant had conceded information establishing that the victim actually was *under* 14. See State's Response to Personal Restraint Petition, at 9; *In re Barr, supra.* Thus, although the defendant's understanding of the law and facts was technically deficient, the defendant did understand the essential nature of the charges: knowing sexual contact with an underage person who is not one's spouse. *See* RCW 9A.44.100. Had Barr's understanding been correct, he would not likely have changed his plea, since in either event he believed that he was guilty. In contrast, Hews' argument is based on the contention that if he had fully understood the elements of second degree murder he would not have entered a plea. Whether or not one accepts Hews' contention, there is no question that confusion as to the requisite mental state for murder is far more significant than the technical infirmity in *Barr.*

By limiting *Barr* to situations where the defendant's understanding suffers from a mere technical infirmity, *Barr* can be made to comport with constitutional requirements. This interpretation is consistent with the United States Supreme Court's position that one need not be informed of every element of the charged offense; notice as to the "critical elements" will suffice. *Henderson,* at 647 n.18; *see also Keene,* at 208. Intent is a critical element of second degree murder. *Henderson,* at 647 n.18. By comparison, the failure to correctly advise Barr of the exact age aspect of the crime of indecent liberties was not so critical as to render his plea involuntary under the unique circumstances of that case. Interpreted thusly, *Barr* simply stands for the proposition that an otherwise voluntary plea based on a general understanding of the charged crime and relevant facts which constitute the crime is not invalidated by a mere technical deficiency in one's understanding. To the extent *Barr* may be read to abolish the due process requirement that one

understands the critical elements of the charges to which one pleads and understands one's conduct to fall within those charges, it is herein modified. We note that this court's holding in *State v. Majors, supra,* upon which *Barr* was based, is not inconsistent with our present interpretation. There we found that the "petitioner was concededly not misled by the technical defect [in the supplemental charging information]". *Majors,* at 359.

Since the alleged failure to inform Hews of the intent element of second degree murder is more than a mere technical defect, *Barr* and *Majors* do not apply. The question then becomes whether the evidence at the hearing was sufficient to satisfy Hews' burden of showing actual prejudice under the standard previously recognized in this case and other similar cases. *See, e.g., State v. Osborne,* 102 Wn.2d 87, 92–93, 684 P.2d 683 (1984); *Keene,* at 207. In our previous disposition of this case, we advised that on remand the trial court should consider the "totality of circumstances" surrounding Hews' plea:

> This may include the nature of the bargain for which the plea was given, the actual advice imparted by defense counsel, and any other fact that may be developed pertaining to Hews' knowledge of his constitutional rights, his awareness of the acts and requisite mental state necessary to constitute the crime as well as the ultimate voluntariness of his plea.

*Hews,* at 89 n.2. In the hearing before the trial court Hews' former attorney testified as to many of these criteria. Counsel's testimony established that he and Hews had discussed the bargain, and Hews agreed that it would be in his best interest to proceed. There is no question that Hews was aware of the constitutional rights he would forgo by pleading guilty, such as his right to a jury trial and right to an appeal. *See Hews,* at 84. Although counsel could not recall specifically discussing with Hews the intent element of second degree murder, he and Hews did go over the amended information together. The language in the amended information corresponded with the then existing

definition of second degree murder, *see* RCW 9.48.040, repealed and replaced by RCW 9A.32.050, Laws of 1975, 1st Ex. Sess., ch. 260, and sufficiently apprised Hews that an intent to kill was required. Counsel's testimony establishes that Hews understood the nature of the second degree murder charge and that the conduct to which he pleaded constituted that crime.

■ Hews attaches special significance to a trial court fact finding that "[t]here is no evidence that petitioner knew the elements of the crime of murder in the second degree as set forth in the amended information." See Clerk's Papers, at 218. However, this finding must be viewed in light of the trial court's other fact findings that Hews was represented by a highly skilled and experienced attorney and was apprised of both the original and amended charges against him. The finding must also be viewed in light of the trial court's ultimate conclusion of law that Hews was not actually prejudiced by his plea. Viewed thusly, the finding on which Hews relies can mean only that there was no *direct* evidence from Hews that he knew the elements of the second degree murder charge. Such a finding is not surprising, given that Hews was incompetent to testify at the trial court's hearing on the circumstances of the plea. Nevertheless, despite Hews' lack of testimony, the sum total of the trial court's fact findings, viewed in light of its legal conclusions, sufficiently demonstrates that Hews understood the critical elements of murder in the second degree.

■ The evidence of voluntariness adduced from counsel's testimony before the trial court is particularly convincing when viewed in combination with the following previously established facts: the presiding judge specifically informed Hews prior to the entering of his plea that intent was a required element of the charged crime, and Hews' attorney acknowledged receipt of the amended information and waived its reading upon satisfaction that his client understood its contents. *See Hews,* at 83–84. In *Keene,* for example, this court held that the defendant had sufficient

understanding of the intent element required for forgery where it was listed in the information and the defendant had acknowledged receiving a copy of the information. *Keene,* at 208–09. Similarly, in *Osborne,* the court found no constitutional infirmity in petitioners' pleas to second degree felony murder despite petitioners' arguments that they had never been specifically advised that knowledge was an essential element of the underlying felony of second degree assault. The court reasoned that the petitioners had reviewed with their attorneys the State's evidence against them and were well aware of the language in the charging information. *Osborne,* at 93–94; *see also Henderson v. Morgan,* 426 U.S. 637, 649 n.2, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976); *United States v. Johnson,* 612 F.2d 305, 309 (7th Cir. 1980). These cases stand for the rule that notifying a defendant of the nature of the crime to which he pleads via an information creates, at the very least, a presumption that the plea was knowing, voluntary and intelligent. *Accord, State v. Johnson,* 46 Wn. App. 302, 307, 730 P.2d 703 (1986).

■ Hews argues that his denial of intent at the plea hearing is sufficient to rebut such a presumption by raising doubt as to whether he in fact understood the nature of the charged crime. *See, e.g., In re Keene,* 95 Wn.2d 203, 214–16, 622 P.2d 360 (1980) (Utter, C.J., concurring in part, dissenting in part) (when a defendant's comments at the time of plea entry indicate misunderstanding, "the court should make further inquiries, and refuse to accept the plea until the equivocation has been eliminated"). Yet, based on the totality of circumstances surrounding the plea taking, we conclude that Hews' denial does not negate the validity of his plea. The constitution does not require that a defendant admit to every element of the charged crime in order to enter a valid guilty plea, but necessitates merely that the defendant understand the critical elements of the crime and admit to conduct which satisfies those elements. *See Hews,* at 91–92; *Henderson v. Morgan, supra.* By pleading to the crime as charged in the amended informa-

tion, as well as by describing the robbery and killing for the trial court, Hews admitted to conduct which established second degree murder, his denial of intent notwithstanding. The denial simply indicated that Hews was unwilling to admit culpability despite his general willingness to enter a knowing and voluntary plea. *See, e.g., North Carolina v. Alford,* 400 U.S. 25, 38, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970); *Osborne,* at 91–95. In light of the strong testimony from competent counsel that Hews had seen the amended information, understood the general nature of the charge against him and had discussed with his attorney alternative courses of action, we conclude that Hews has failed to establish actual prejudice in the taking of his plea.

We affirm the trial court's order dismissing the personal restraint petition. We find, on the basis of the evidence presented, that Hews' 1969 plea to second degree murder satisfied constitutional requirements. We modify the trial court ruling only insofar as to note that if Hews should later become competent and this occurrence results in new evidence concerning the validity of his plea, Hews will have "good cause" to renew his personal restraint petition.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and DURHAM, JJ., concur.