

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 JUN 16 AH 9: 45

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 69802-8-I |
| Respondent, | |
| v. | DIVISION ONE |
| JOHN WESLEY JACKSON, JR., | UNPUBLISHED OPINION |
| Appellant. | FILED: June 16, 2014 |

LEACH, J. — John Jackson Jr. appeals the trial court's denial of his motion to withdraw his guilty plea. He claims that his trial counsel did not provide effective assistance during plea negotiations because the attorney failed to inform Jackson of the State's burden to disprove his self-defense claim. He also claims that his sentence for attempted assault in the first degree exceeds the statutory maximum. In a statement of additional grounds, he further claims that the court had no basis to impose an exceptional sentence, that the court sentenced him twice on one cause number and improperly imposed consecutive sentences, and that the court violated his right to a speedy trial. Because we accept the State's concession that the imposed period of community custody, when combined with Jackson's imposed term of incarceration, exceeds the statutory maximum sentence for attempted assault in the first degree, we remand to the trial court either to amend the community custody term or to resentence

Jackson on the attempted assault conviction consistent with RCW 9.94A.701(9).

Because Jackson's remaining claims are meritless, we otherwise affirm.

Background

Jackson rented two rooms in a building that Anthony Narancic managed.[1] After Jackson moved out of the building in September 2011, Narancic retained his security deposit. Narancic received several threatening telephone calls from Jackson, demanding that Narancic return his security deposit.

On October 4, 2011, Jackson offered another tenant money to call him when Narancic appeared on the property. After this tenant called, Jackson rushed into Narancic's office and beat him over the head with a metal club or pipe. Vincent Pettie rushed into the office and held down Narancic while Jackson continued to beat Narancic and told Narancic that he would kill him. As Jackson and Pettie drove away, Jackson yelled, "I'm a gangster" and "I'll fucking kill you."

When police arrested Jackson, he stated that he and Narancic got into a "tussle" and that "[i]t was a fair fight." Jackson denied assaulting Narancic with a pipe.

The State charged Jackson with assault in the first degree. Before trial, Jackson told the court that he intended to raise a self-defense claim.

---

[1] Jackson stipulated that the court could consider the facts contained in the certification for determination of probable cause and the prosecutor's summary for purposes of the sentencing hearing. After Jackson filed the motion to withdraw his guilty plea, the trial prosecutor submitted a declaration to the court detailing the State's anticipated evidence at trial.

The parties reached a plea agreement on the third day of trial. Jackson agreed to plead guilty to attempted assault in the first degree and felony harassment. The parties agreed that the prosecutor would recommend an exceptional sentence above the standard range of 120 months on the assault count, the statutory maximum, and 60 months on the harassment count, to run consecutively. The prosecutor would also recommend 36 months of community custody on the assault count.

Before sentencing, Jackson moved to withdraw his guilty plea, alleging ineffective assistance of counsel. The court continued the sentencing date and allowed Jackson's attorney, Daniel Felker, to withdraw based on a potential conflict of interest.

After the court appointed new counsel, Jackson moved to withdraw his guilty plea based upon ineffective assistance of counsel. He argued,

> Despite being placed on notice that Mr. Jackson would assert a self-defense claim at trial, neither the state nor the court inquired of Mr. Jackson during his plea colloquy whether he understood what rights he was giving up relative to the defense of self-defense. At no point was Mr. Jackson asked if he was aware of what he would need to prove for a successful self-defense claim, or that the state would have the burden of disproving his claim of self-defense beyond a reasonable doubt at trial.

Jackson claimed, "If [Felker] had told me about the laws of self-defense, and the state's burdens, I would have not pled guilty but would have continued the trial and testified."

Felker submitted two declarations about his representation. Felker stated that "in an initial meeting at the King County Jail, Mr. Jackson described his

participation in the incident, indicating that he acted in self defense." He also stated,

1. Over the course of my representation of Mr. Jackson and prior to the trial date and subsequent plea in this matter, I discussed the defense of self-defense with Mr. Jackson. We discussed his right to testify and I was aware of the likely substance of Mr. Jackson's testimony if he decided to testify at trial.

2. I reviewed the entire discovery, visited the scene of the crime and interviewed many of the State's witnesses. I had two different investigators assigned, who worked many hours on the case. I was familiar with the facts of the case and the evidence that the State would likely present. Approximately a month before trial, after I had interviewed the victim and the State's witnesses and conducted an independent investigation and evaluation of the case, Mr. Jackson asked me for my opinion on the strength of his possible defense. Based upon everything I knew, including what Mr. Jackson discussed with me, I told him that he had "a really tough case," as I did not think Mr. Jackson could avoid conviction by raising self-defense. I believed that the State could prove that Mr. Jackson had not acted in self-defense. I advised Mr. Jackson that if the prosecutor was willing to make a reasonable plea offer that he should consider it.

3. On the third day of trial, when Mr. Jackson announced to me and the State that he wanted to plead guilty to an offer of 180 months, which had been discussed with [the prosecutor] the previous day. The parties then engaged in formal plea negotiations for the first time. Based on my evaluation of the strength of the State's case, taking into consideration Mr. Jackson's proffered defense of self-defense and my knowledge of his intended testimony, I believe that Mr. Jackson's plea was in his best interests and would save him many years in prison.

After a hearing, the trial court denied Jackson's motion to withdraw his guilty plea. The court entered the following findings of fact:

2. The court finds the statements contained in the October 31, 2012 and December 7, 2012 declarations of trial counsel, Daniel Felker, credible.

3. The court does not find credible the statements of the defendant on October 5, 2012, in court and does not find credible the statements contained in the declaration of the defendant regarding his meetings and discussions with Mr. Felker.

4. The court finds that the State would have presented evidence showing that the defendant (and his co-defendant) showed up at the victim's work with a weapon in hand; that the defendant attacked and repeatedly assaulted the victim with the weapon; that the defendant had made prior threats against the victim; that the defendant had offered money to another tenant if that tenant would let the defendant know when the victim arrived at work; and that as the defendant was leaving, he threatened to kill the victim, yelling, "I'm a gangster, I'll kill you."

5. The defendant has never identified any evidence that he acted in self-defense. Attorney Felker credibly represented that the defendant could not have successfully claimed that he acted in self-defense.

6. There was substantial evidence that the defendant did not act in self-defense and was the first aggressor.

7. The court finds that Mr. Felker discussed self-defense with the defendant, discussed the defendant's potential testimony with the defendant, and conveyed to the defendant that while he could assert self-defense, the State would easily disprove that assertion. While Mr. Felker may not have used the exact verb[i]age of a "shifting burden of proof," Mr. Felker did convey to the defendant that he would not be successful in escaping conviction by claiming self-defense. The defendant has not established that this advice was unreasonable.

The court concluded that Felker's advice to Jackson to accept the plea offer was "objectively reasonable," that Felker's representation was not deficient, that Jackson demonstrated no prejudice from Felker's allegedly deficient performance, that Jackson's plea was "constitutionally valid," and that "a manifest injustice has not been committed."

The court imposed the agreed-upon exceptional sentence of 120 months of confinement on the assault count and 60 months of confinement on the harassment count, to run consecutively. The court also imposed 36 months of community custody on the assault count.

Jackson appeals.

Analysis

Jackson challenges the trial court's denial of his motion to withdraw his guilty pleas, claiming that his pleas "were involuntary and the product of ineffective assistance of counsel." He alleges that his attorney had a duty to inform him before he entered his guilty pleas that once he presented some evidence of self-defense, the burden of proof shifted to the State to disprove this defense beyond a reasonable doubt.

We review the denial of a motion to withdraw a guilty plea for abuse of discretion.[2] A trial court abuses its discretion when its decision is based upon untenable grounds or reasons.[3]

Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent.[4] For a plea to be valid, "the accused must be apprised of the nature of the charge."[5]

The court must allow a defendant to withdraw a guilty plea when necessary to correct a manifest injustice.[6] Denial of effective counsel constitutes

---

[2] State v. Pugh, 153 Wn. App. 569, 576, 222 P.3d 821 (2009) (citing State v. Marshall, 144 Wn.2d 266, 280, 27 P.3d 192 (2001)).

[3] Pugh, 153 Wn. App. at 576 (citing State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

[4] In re Pers. Restraint of Montoya, 109 Wn.2d 270, 277, 744 P.2d 340 (1987) (citing In re Pers. Restraint of Hews, 108 Wn.2d 579, 590, 741 P.2d 983 (1987); Henderson v. Morgan, 426 U.S. 637, 644-45, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976)).

[5] Montoya, 109 Wn.2d at 278 (citing Henderson, 426 U.S. at 645; Hews, 108 Wn.2d at 590; State v. Osborne, 102 Wn.2d 87, 92-93, 684 P.2d 683 (1984); In re Pers. Restraint of Keene, 95 Wn.2d 203, 207, 622 P.2d 360 (1980)).

[6] CrR 4.2(f).

a manifest injustice.[7] "In the context of plea bargains, effective assistance of counsel means that defense counsel actually and substantially assist his client in deciding whether to plead guilty."[8]

A defendant challenging a guilty plea on the basis of ineffective assistance of counsel must show with reasonable probability that but for counsel's deficient performance, he would not have pleaded guilty and would have proceeded to trial.[9] Where counsel's alleged error is a failure to advise the defendant of a potential affirmative defense to the crime charged, determining prejudice depends largely on whether the defense likely would have succeeded at trial.[10] A prediction about a trial's possible outcome "should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'"[11] A bare allegation that a defendant would not have pleaded guilty but for his attorney's allegedly deficient performance does not establish prejudice.[12] A claim of ineffective assistance of counsel fails if the defendant does not establish both deficient performance and resulting prejudice.[13]

---

[7] State v. Wakefield, 130 Wn.2d 464, 472, 925 P.2d 183 (1996) (quoting State v. Saas, 118 Wn.2d 37, 42, 820 P.2d 505 (1991)).

[8] State v. Holley, 75 Wn. App. 191, 197, 876 P.2d 973 (1994) (citing State v. Malik, 37 Wn. App. 414, 416, 680 P.2d 770 (1984)).

[9] State v. Garcia, 57 Wn. App. 927, 932-33, 791 P.2d 244 (1990) (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

[10] Hill, 474 U.S. at 59.

[11] Hill, 474 U.S. at 59-60 (quoting Strickland v. Washington, 466 U.S. 668, 695, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[12] In re Pers. Restraint of Peters, 50 Wn. App. 702, 708, 750 P.2d 643 (1988).

[13] Strickland, 466 U.S. at 697.

A person is entitled to act in self-defense when he reasonably believes that he is about to be injured and uses no more force than necessary to prevent the offense.[14]

Jackson attempts to distinguish the two cases the State contends control the outcome of this case, In re Personal Restraint of Montoya[15] and State v. Haydel.[16] In Montoya, the defendant challenged the validity of his guilty plea on the basis that he was not adequately apprised of the charge because he was never informed about the burden of proof on the issue of self-defense.[17] The court explained that self-defense "becomes an issue only if the defendant raises the defense and presents some credible evidence to support it."[18] The defendant told police that even though he "could not remember exactly what happened," "he was defending himself."[19] The court stated, "Montoya's bare assertion that he was defending himself is unpersuasive given that he was unable to remember exactly what happened."[20] The court concluded that because no potential evidence would support a self-defense claim, "the trial court certainly had no obligation to inform Montoya of the burden of proof on a purely hypothetical claim."[21]

---

[14] RCW 9A.16.020(3); State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).
[15] 109 Wn.2d 270, 744 P.2d 340 (1987).
[16] 122 Wn. App. 365, 95 P.3d 760 (2004).
[17] Montoya, 109 Wn.2d at 279.
[18] Montoya, 109 Wn.2d at 279.
[19] Montoya, 109 Wn.2d at 279.
[20] Montoya, 109 Wn.2d at 280.
[21] Montoya, 109 Wn.2d at 280.

In Haydel, although the defendant indicated that he planned to claim self-defense if the case proceeded to trial, the court noted, "The statement in the omnibus order regarding the general nature of Haydel's defense is not evidence."[22] And the facts to which Haydel pleaded established no evidence of self-defense.[23] Accordingly, the court held, "Because Haydel presented no evidence of self-defense, the State had no obligation to inform Haydel of its burden of proof on his purely hypothetical claim at the time of the taking of the plea."[24]

Jackson contends that he presented evidence of "a plausible self defense claim" at the time of his plea:

> Jackson asserted self defense at the time of arrest. He told the officer "they got into a tussle," that "it was a fair fight," and no pipe was involved. Jackson indicated before trial in his trial memorandum he intended to testify he acted in keeping with this claim of self defense. Defense counsel reiterated during pretrial proceedings the defense was self defense.

These statements are similar to those rejected in Montoya and Haydel. Despite Jackson's argument, these bare assertions would not support a self-defense claim. Therefore, Jackson's attorney had no obligation to inform him of the burden of proof for self-defense. Because Jackson fails to establish that counsel's performance was deficient, we do not address if he suffered prejudice from counsel's allegedly deficient conduct.

---

[22] Haydel, 122 Wn. App. at 371.
[23] Haydel, 122 Wn. App. at 371.
[24] Haydel, 122 Wn. App. at 371.

Jackson also claims that the trial court imposed a sentence that exceeded the statutory maximum for the assault count. Although he did not raise this challenge in the trial court, he may raise it for the first time on appeal.[25]

A court has the power to impose only sentences provided by law.[26] "'When a sentence has been imposed for which there is no authority in law, the trial court has the power and duty to correct the erroneous sentence, when the error is discovered.'"[27]

RCW 9.94A.701(9) requires the trial court to reduce a term of community custody "whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021." In State v. Boyd,[28] our Supreme Court held that this statute prohibits a trial court from imposing a term of community custody that when combined with the term of incarceration, results in a sentence that exceeds the statutory maximum for the crime.

Jackson received the maximum sentence of 120 months of confinement for attempted assault in the first degree. The court also imposed 36 months of community custody on this count.[29] The State concedes that when combined with the imposed term of community custody, Jackson's sentence exceeds the

---

[25] State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008) (quoting State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999)).

[26] In re Pers. Restraint of Carle, 93 Wn.2d 31, 33, 604 P.2d 1293 (1980).

[27] Carle, 93 Wn.2d at 33 (quoting McNutt v. Delmore, 47 Wn.2d 563, 565, 288 P.2d 848 (1955)).

[28] 174 Wn.2d 470, 473, 275 P.3d 321 (2012).

[29] See RCW 9.94A.701(1)(b).

statutory maximum. Because the sentencing court had no authority to impose this sentence on the assault count, we remand to the trial court either to amend the community custody term or to resentence Jackson on the attempted assault conviction consistent with RCW 9.94A.701(9).

In a statement of additional grounds, Jackson claims, "I was given an exceptional sentence, on what grounds? I feel that the exceptional sentence was not legally, or incorrectedly [sic] done." Because Jackson agreed to an exceptional sentence as part of his plea and he fails to show that this agreement was invalid, we reject his claim.

Jackson also alleges, "I was sentenced twice on one cause[ ] number and given consecutive sentences." Because Jackson provides no legal argument supporting this claim, we decline to address it.[30]

Finally, Jackson asserts, "I felt that my speedy trial rights were violated, due to the fact that I informed the judge that I was set to go to trial and he gave continuances without me agreeing or wa[i]ving my speedy trial rights." Although the record indicates that the court granted a series of continuances, it provides no evidence of the reasons that the court granted them. Because consideration of this issue involves facts not in the record, Jackson may not raise it.[31]

---

[30] RAP 10.10(c); State v. Calvin, 176 Wn. App. 1, 26, 302 P.3d 509 (2013) (citing State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008)), petition for review filed, No. 89518-0 (Wash. Nov. 12, 2013).

[31] Calvin, 176 Wn. App. at 26 (citing Alvarado, 164 Wn.2d at 569).

## Conclusion

Because the imposed period of community custody, when combined with Jackson's imposed term of incarceration, exceeds the statutory maximum sentence for attempted assault in the first degree and Jackson shows no other error, we affirm his convictions and remand to the trial court either to amend the community custody term or to resentence Jackson on the attempted assault conviction consistent with RCW 9.94A.701(9).

_Leach, J._

WE CONCUR:

_Trickey, J._          _Cox, J._