222 P.3d 821 (2009)
STATE of Washington, Respondent,
v.
Bob Andrew PUGH, Appellant.
No. 38149-4-II.
Court of Appeals of Washington, Division 2.
December 15, 2009.
*822 Sheri Lynn Arnold, Attorney at Law, Tacoma, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Atty Ofc., Tacoma, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 Bob A. Pugh pleaded guilty to third degree assault for striking a King County Sheriff's Department officer while the officer was escorting him from the McNeil Island Special Commitment Center to the King County jail. The trial court accepted Pugh's guilty plea and entered judgment. Before sentencing, Pugh moved to withdraw his guilty plea and moved to proceed pro se. The trial court substituted Pugh's counsel, then later allowed Pugh to proceed pro se with the newly appointed counsel acting as his standby counsel. The trial court denied Pugh's pro se motion to withdraw his guilty plea and sentenced him to nine months incarceration. Pugh appeals the trial court order denying his motion to withdraw his guilty plea, asserting that his standby counsel was ineffective for failing to obtain affidavits or subpoena witnesses to support his motion. Because standby counsel did not owe Pugh a duty to obtain affidavits or subpoena witnesses and the trial court did not abuse its discretion in denying Pugh's motion to withdraw his guilty plea, we affirm.

FACTS
¶ 2 On January 27, 2006, the State charged Pugh with third degree assault, contrary to RCW 9A.36.031(1)(g), and resisting arrest, contrary to RCW 9A.76.040(1). The State alleged that Pugh assaulted King County Sheriff's Department Sergeant Michael Porter while Porter escorted him from the McNeil Island Special Commitment Center, where Pugh resided, to the King County jail to await a hearing in King County Superior Court.
¶ 3 On April 19, 2006, the trial court entered an order for Pugh's examination by Western State Hospital staff to determine his competency, sanity, and mental state. On May 18, 2006, the trial court entered a corrected order for Pugh's examination providing for an examination by a developmental disabilities professional.
¶ 4 Western State Hospital psychologist Dr. George Nelson filed a report of his psychological evaluation of Pugh on August 8, 2006. Nelson concluded that Pugh was competent to stand trial, that he was sane at the time he committed his alleged offenses, and that he was able to form the requisite mental states for the crimes alleged. Nelson's evaluation also stated that his "[o]verall impression [of Pugh was that he was] functioning in *823 the low average range of intellectual abilities." Clerk's Papers at 96.
¶ 5 The trial court held a competency hearing on August 8, 2006. Defense counsel Linda King represented Pugh at the hearing. The trial court found that Pugh was competent to stand trial, noting that Dr. Nelson's forensic mental health report indicated Pugh was able to assist in his defense and that he understood the proceedings against him.
¶ 6 On February 26, 2007, the State filed an amended information charging Pugh with only third degree assault in exchange for his guilty plea. Pugh entered an Alford/Newton[1] plea to the third degree assault charge that same day. The trial court entered into a colloquy with Pugh:
THE COURT: Do you understand you have the right to remain silent?
[Pugh]: Yes.
THE COURT: Do you read, write, understand English?
[Pugh]: Yes.
THE COURT: Have you gone over the Statement of Defendant on Plea of Guilty with your attorney?
[Pugh]: Yes.
THE COURT: Do you understand the elements and the penalty of the crime you've been charged with?
[Pugh]: Yes.
THE COURT: By pleading guilty, there's no trial, you don't defend yourself. Do you understand that?
[Pugh]: Yes.
THE COURT: The Court, the judge does not have to follow the recommendations offered by the attorneys, as long as I stay within the law. Do you understand that?
[Pugh]: Yes.
THE COURT: Paragraph 11 reads, "Newton Alford Plea. I do not admit I assaulted King County Sheriff Department Sergeant Porter on January 24, 2006, but have reviewed the evidence with my attorney and believe there's a substantial likelihood I would be convicted at trial and therefore I'm pleading guilty to take advantage of the plea agreement. BP." Are those your initials?
[Pugh]: Uh-huh.
THE COURT: By putting your initial next to the paragraph, you're accepting the paragraph as your own, as if you wrote it out?
[Pugh]: Are you accepting it?
[King]: By putting your initials, is that your statement?
[Pugh]: Is that my statement? I didn't write the statement.
THE COURT: Are you accepting it by pleading guilty this morning? I'll read it to you again. [Trial court reads the statement again.] Are you accepting that as your own statement?
[Pugh]: Yes.
THE COURT: Are you pleading guilty, freely and voluntarily?
[Pugh]: Yes.
THE COURT: Anyone forcing you to plead guilty?
[Pugh]: No.
THE COURT: Anyone making special promises to you to plead guilty?
[Pugh]: No.
THE COURT: Court is satisfied that this plea is made freely and voluntarily with a complete understanding of the rights being waived and of the potential sentence that may be imposed.
How do you plead to assault third degree?
[Pugh]: Guilty.
THE COURT: I'll accept your plea.
Report of Proceedings (RP) (Feb. 26, 2007) at 4-6. The trial court set sentencing over for approximately 12 months as recommended by the parties in the plea agreement and ordered that Pugh be returned to the McNeil Island Special Commitment Center during the delay and that time he spent there would count as credit for time served.
*824 ¶ 7 The trial court scheduled sentencing for February 21, 2008. On that date, the trial court entered an order allowing King to withdraw as Pugh's defense counsel and for substitution of new counsel. The order indicated that Pugh sought to withdraw his guilty plea and that he requested to proceed pro se. The trial court reserved its ruling on Pugh's motion to withdraw his guilty plea and to proceed pro se for a hearing at a later date.
¶ 8 On May 16, 2008, the trial court held a hearing on Pugh's motions. Pugh appeared at the hearing with appointed counsel James Schoenberger. After entering into an extensive colloquy with Pugh, the trial court allowed him to proceed pro se with Schoenberger acting as his standby counsel. The trial court continued the case to allow Pugh time to file a formal written motion to withdraw his guilty plea. On June 2, 2008, Pugh filed his pro se motion to withdraw his guilty plea.
¶ 9 On August 1, 2008, the trial court held a hearing on Pugh's motion to withdraw his guilty plea. At the hearing, Pugh indicated that he was not ready to proceed because his former defense counsel, King, was not present and that one of his arguments for withdrawing his guilty plea was that King was ineffective in advising him to plead guilty. Pugh also stated that he was having issues with his seizures and that he could not concentrate without his medication. The State responded that King was not present because Pugh had not subpoenaed her and because Pugh chose not to waive his confidential communications with her. Pugh also asserted that he had not obtained any affidavits or subpoenaed any witnesses to support his motion to withdraw his guilty plea. Later in the hearing, Pugh stated, "Maybe we should just proceed to sentencing. I cannot concentrate here and I'm in pain. So, you know, that's it ... I have my objections on the record and we'll proceed to an appeal." RP (Aug. 1, 2008) at 6.
¶ 10 The trial court denied Pugh's motion to withdraw his guilty plea. The trial court sentenced Pugh to 9 months incarceration, with credit for time served, and 12 months of community custody. Pugh timely appeals his conviction.

ANALYSIS
¶ 11 Pugh asserts that the trial court erred by denying his motion to withdraw his guilty plea because his standby counsel failed to assist him in obtaining affidavits and failed to subpoena witnesses required to support his claim. We disagree and affirm Pugh's conviction.
¶ 12 We review a trial court's denial of a motion to withdraw a guilty plea for abuse of discretion. State v. Marshall, 144 Wash.2d 266, 280, 27 P.3d 192 (2001). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. State v. Brown, 132 Wash.2d 529, 572, 940 P.2d 546 (1997), cert. denied, 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998).
¶ 13 CrR 4.2(f) governs a defendant's prejudgment withdrawal of a guilty plea and provides:
The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice. If the defendant pleads guilty pursuant to a plea agreement and the court determines under RCW 9.94A.090 that the agreement is not consistent with (1) the interests of justice or (2) the prosecuting standards set forth in RCW 9.94A.430-.460, the court shall inform the defendant that the guilty plea may be withdrawn and a plea of not guilty entered. If the motion for withdrawal is made after judgment, it shall be governed by CrR 7.8.
¶ 14 "Judgment," under CrR 4.2(f), means the date the judgment and sentence are filed with the clerk. State v. Davis, 125 Wash. App. 59, 68, 104 P.3d 11 (2004). Because the trial court had not yet sentenced Pugh when he moved to withdraw his guilty plea, CrR 4.2(f) applies.
¶ 15 CrR 4.2(f) requires that the trial court allow a defendant to withdraw his guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." "Manifest injustice" means "an injustice that is obvious, directly observable, overt, [and] not obscure." State v. Taylor, 83 Wash.2d *825 594, 596, 521 P.2d 699 (1974) (citing Webster's Third International Dictionary (1966)). Because of the many safeguards that precede a guilty plea, the manifest injustice standard for plea withdrawal is demanding. Taylor, 83 Wash.2d at 596, 521 P.2d 699.
¶ 16 A defendant's signature on a plea agreement is "strong evidence" that the plea is voluntary. State v. Branch, 129 Wash.2d 635, 642, 919 P.2d 1228 (1996). And when the trial court has inquired into the voluntariness of the plea on the record, as it did here, the presumption of voluntariness is warranted. State v. Perez, 33 Wash.App. 258, 262, 654 P.2d 708 (1982). But despite the strong presumption of voluntariness, a trial court should grant leave to withdraw a plea "`whenever it appears that the withdrawal is necessary to correct a manifest injustice.'" Marshall, 144 Wash.2d at 280-81, 27 P.3d 192 (quoting CrR 4.2(f)). Our Supreme Court has suggested four indicia of manifest injustice that would allow a defendant to withdraw his guilty plea: (1) the defendant received ineffective assistance of counsel, (2) the defendant did not ratify his plea, (3) the plea was involuntary, and (4) the prosecution did not honor the plea agreement. Taylor, 83 Wash.2d at 597, 521 P.2d 699.
¶ 17 Here, Pugh's motion to withdraw his guilty plea alleged that his former defense counsel, King, was ineffective for failing to investigate a diminished capacity defense. His motion also implied that his guilty plea was involuntary because he had not taken necessary medications at the time he made his plea.[2] The motion included an affidavit written by Pugh recounting the events underlying his third degree assault charge but did not include any facts concerning his motion to withdraw his guilty plea.
¶ 18 In denying Pugh's motion to withdraw his guilty plea, the trial court relied on the transcript of Pugh's plea hearing, in which Pugh expressly asserted to the trial court that he made his guilty plea freely and voluntarily, and which indicated he entered his guilty plea with an understanding that he was waiving certain rights. The trial court also relied on Dr. Nelson's forensic evaluation, which found Pugh competent to stand trial. Pugh's motion to withdraw his guilty plea did not present any evidence contradicting Nelson's findings. Additionally, Pugh's motion did not state that he was deprived of necessary medication when he entered his guilty plea or that a lack of medication would impair his ability to comprehend the consequences of entering a guilty plea. Because Pugh did not present evidence to show a manifest injustice, the trial court did not abuse its discretion in denying his motion to withdraw his guilty plea.
¶ 19 But Pugh does not contend that the trial court abused its discretion in denying his withdrawal of guilty plea based on the evidence then before it. Instead, Pugh argues that his standby counsel was ineffective for failing to assist him in his motion to withdraw his guilty plea. Specifically, Pugh argues that standby counsel was ineffective for failing to assist him in obtaining necessary affidavits and subpoenaing witnesses required to present his claim in a meaningful manner. Pugh asserts that he could not perform these functions on his own while incarcerated. Pugh does not explain how these witnesses' affidavits or testimony would have supported his motion to withdraw his guilty plea.
¶ 20 A criminal defendant has the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution. In re Pers. Restraint of Brett, 142 Wash.2d 868, 873, 16 P.3d 601 (2001). A CrR 4.2(f) presentence motion to withdraw a guilty plea is a critical stage of a criminal proceeding for which a defendant has a constitutional right to be assisted by counsel. Davis, 125 Wash.App. at 63-64, 104 P.3d 11. The Sixth Amendment also gives a criminal *826 defendant the right to represent himself at trial. State v. McDonald, 143 Wash.2d 506, 511, 22 P.3d 791 (2001) (citing Faretta v. California, 422 U.S. 806, 816, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). Although a criminal defendant has a constitutional right to self-representation, the United States Supreme Court has held that a trial court has the authority to appoint standby counsel over the defendant's objections. McDonald, 143 Wash.2d at 511, 22 P.3d 791 (citing McKaskle v. Wiggins, 465 U.S. 168, 177-78, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)).
¶ 21 In general, a criminal defendant who exercises his constitutional right to self-representation cannot later claim ineffective assistance of counsel, because the defendant assumed complete responsibility for his own representation. McDonald, 143 Wash.2d at 512, 22 P.3d 791. But our Supreme Court has suggested that a criminal defendant may claim ineffective assistance of standby counsel if standby counsel violated a limited duty or obligation owed to the pro se defendant. See McDonald, 143 Wash.2d at 512, 22 P.3d 791 (criminal defendant has a right to conflict-free standby counsel).
¶ 22 In order to prevail on an ineffective assistance of counsel claim, Pugh must show that (1) trial counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant, in that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996). If either part of the test is not satisfied, the inquiry need go no further. Hendrickson, 129 Wash.2d at 78, 917 P.2d 563. In reviewing ineffective assistance of counsel claims, we begin with the strong presumption that counsel has rendered adequate assistance. State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995).
¶ 23 To determine whether Pugh's standby counsel rendered deficient performance, we must first determine what duties standby counsel owes to a pro se defendant. A standby counsel's role is not to represent the pro se defendant. State v. Bebb, 108 Wash.2d 515, 525, 740 P.2d 829 (1987). Instead, a standby counsel's role is to provide the pro se defendant with technical information and "`to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.'" Bebb, 108 Wash.2d at 525, 740 P.2d 829 (quoting Faretta, 422 U.S. at 834 n. 46, 95 S.Ct. 2525). Additionally, our Supreme Court has stated,
A defendant possesses a right to have conflict-free standby counsel because standby counsel must be (1) candid and forthcoming in providing technical information/advice, (2) able to fully represent the accused on a moment's notice, in the event termination of the defendant's self-representation is necessary, and (3) able to maintain attorney-client privilege.
McDonald, 143 Wash.2d at 512-13, 22 P.3d 791. Division One of this court has held that standby counsel is not obligated to perform research and errands on behalf of a pro se defendant unless otherwise ordered by the trial court. State v. Silva, 107 Wash.App. 605, 629, 27 P.3d 663 (2001).[3]
¶ 24 Here, the trial court did not order standby counsel to obtain affidavits or subpoena witnesses to support Pugh's motion to withdraw his guilty plea and there was no showing to justify such an order. See Silva, 107 Wash.App. at 630, 27 P.3d 663 ("a trial court may, upon a proper showing, order standby counsel to [perform a specific task for the pro se defendant.]") (emphasis added). Further, the record does not indicate *827 that Pugh asked his standby counsel to help him secure affidavits or subpoena witnesses.
¶ 25 Here, the trial court ordered standby counsel to assist Pugh in preparing his motion. And assistance by a standby counsel is limited to providing technical advice. Bebb, 108 Wash.2d at 525, 740 P.2d 829. Because Pugh has failed to demonstrate that his standby counsel's performance was deficient, we need not address the prejudice prong to Pugh's ineffective assistance of counsel claim. Based on the evidence presented before it, the trial court did not abuse its discretion by denying Pugh's motion to withdraw his guilty plea. Accordingly, we affirm.
We concur: HUNT, J., and PENOYAR, A.C.J.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); State v. Newton, 87 Wash.2d 363, 552 P.2d 682 (1976).
[2] Pugh's motion presented legal arguments concerning the effect of drugs on the voluntariness of a defendant's guilty plea but his motion did not present any facts indicating that he was impaired because he had not taken necessary medication. At the May 16, 2008 hearing prior to the trial court granting Pugh's motion to proceed pro se, Pugh's substitute counsel informed the trial court, "[Pugh] has told me he was off his medications at the time the plea was taken." RP (May 16, 2008) at 10.
[3] The Silva court addressed the role of standby counsel in the context of defendant's claim that the State denied him reasonable access to resources needed to prepare a meaningful pro se defense in violation of article I, section 22 of the Washington State Constitution. 107 Wash.App. at 609, 27 P.3d 663. Although Pugh asserts that he did not have the ability to obtain affidavits or subpoena witnesses while incarcerated, he does not assert in this appeal a constitutional claim that the State deprived him of access to any resources. And the record does not indicate why Pugh would not be able to obtain affidavits or subpoena witnesses while incarcerated. Thus, we limit our review to addressing whether Pugh's standby counsel provided ineffective assistance.