# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46110-2-II |
| Respondent, | |
| v. | |
| REGINALD LEMAR JUNTUNEN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Reginald Lemar Juntunen appeals the superior court's denial of his motion to withdraw his guilty plea to one count of first degree child molestation[1] with a predatory aggravator.[2]  On appeal, Juntunen (1) assigns error to four findings of fact, claiming they are unsupported by the record; and (2) claims his guilty plea is invalid because he received ineffective assistance of counsel for (a) not negotiating a better plea deal; (b) not exploiting inconsistences in the victim's story; (c) not hiring a DNA expert; (d) meeting with him only 10 times, not 14; and (e) his attorney's simultaneous role as a city prosecutor in the same county.  We reject each of Juntunen's arguments and affirm the denial of his motion to withdraw his guilty plea.

---

[1] RCW 9A.44.083.

[2] RCW 9.94A.030(39).

FACTS

In September 2007, a detective with the Lewis County Sheriff's Office responded to a reported sexual assault of an eight-year-old girl, S.E.H.[3], at a campground in Lewis County. S.E.H. told the detective that she was riding her bike around the campground when she was approached by a man who ordered her into the campground bathroom and told her he had a knife. Once inside the bathroom, S.E.H. told the detective that the man "pushed her to the floor," "pulled her pants down to her knees," and "began to rub his hands over the top of her . . . vagina and buttocks area." Clerk's Papers (CP) at 9-10. She told the detective that the man did not "put anything inside of her private area," and after an unknown amount of time, the man "put something on her" "front privates" that was "white like lotion and felt warm." CP at 10.

After the man left the bathroom, S.E.H. went back to her family's campsite, reported to her mother what had happened, and then "wiped the white lotion substance off of herself with a tissue." CP at 10. A deputy with the sheriff's department collected the substance from the tissue and placed it into evidence.

Almost five years later, in June 2012, the Washington State Patrol Crime Laboratory advised another detective with the Lewis County Sheriff's Department that it had discovered a deoxyribonucleic acid (DNA) match to the DNA recovered from the substance on the tissue. Using the Washington State Patrol's Combined DNA Index System (CODIS), the DNA profile had been matched to Reginald Juntunen. The detective interviewed S.E.H. again, and her story was substantially the same except this time she alleged that the man had anally raped her.

---

[3] We use initials to protect the minor victim's privacy interests. General Order 2011-1 of Division II, In Re The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases, available at: http://www.courts.wa.gov/appellate_trial_courts/

Juntunen was charged by amended information with (1) first degree child rape, with three aggravators; (2) first degree rape, with four aggravators; (3) indecent liberties by forcible compulsion, with four aggravators; and (4) first degree kidnapping with sexual motivation, with six aggravators. Christopher Baum was appointed to represent Juntunen.

Baum had been practicing for about 10 years at the time of his appointment to this case, the first six years as a deputy prosecutor, and since then as defense counsel. He had represented Juntunen in at least one prior prosecution in Lewis County.

Juntunen pleaded guilty to first degree child molestation with a predatory aggravator, pursuant to a second amended information, on November 9, 2012. On December 10, 2013, with new counsel, Juntunen moved to withdraw his guilty plea.

At the hearing on the motion to withdraw his plea, Juntunen waived his attorney-client privilege and Baum testified. Baum testified that at his first meeting with Juntunen, Juntunen "right off the bat" admitted to the allegations, except he told Baum that he did not have intercourse with S.E.H. and he did not have a knife. Verbatim Transcript of Proceedings (VTP) (Feb. 14, 2014) at 44.

Juntunen's admission to Baum led Baum to "spen[d] a lot of time looking at the legal issues surrounding [the] DNA [evidence]." VTP (Feb. 14, 2014) at 47. Baum explained that he "looked into multiple" experts and located a DNA expert in California. VTP (Feb. 14, 2014) at 69. But, after his discussions with the expert and with the crime laboratory in Vancouver, Baum decided not to hire the expert to attack the DNA evidence.

Baum testified, "There really wasn't a way to get around it. The warrant was solid that they got for his DNA. . . . I called to talk to the DNA tester down in Vancouver, [Washington],

and we spent quite a bit of time talking about the sample provided." VTP (Feb. 14, 2014) at 47.

Baum continued:

> In any event, the match to him was uncontroverted then his own admission to me that he had done this kept me from going after the DNA, because I initially was going to have the DNA analyzed, but chose not to, because I think it ultimately would have produced an additional witness against him . . . .
>
> . . . .
>
> So if you go to trial on a case like this and you decide prior to trial that you are going to have DNA analysis done really to try to refute the State's case, most of the time you don't have a client who is admitting it. Most of the time the client is denying it, so you are working from an idea maybe I'll get some evidence that shows consistent with what he says that it did not happen . . . .
>
> But when you have a client saying, well, I did in fact do it, this is exactly what happened, because I knew it was his DNA, I'd only be trying to attack the State's evidence.
>
> Now, I talked to the DNA expert from the State, and I could find no kinks, couldn't find any errors for that matter that the State had done, so if I go I get an expert knowing that my client has admitted to doing it knowing that the State's analysis came back positive for his DNA, I can—really what I am doing is producing an additional witness that would be able to testify that Mr. Juntunen was in fact the person that did this, which does not benefit him.

VTP (Feb. 14, 2014) at 48-49, 66-67.

Baum also testified that through the course of his representation, he repeatedly discussed with Juntunen the differences in the statements made by S.E.H. immediately after the molestation and shortly before Juntunen's arrest. The differences in S.E.H.'s stories was the "primary reason" he drove to Sumner, Washington to interview S.E.H. VTP (Feb. 14, 2014) at 45. After interviewing S.E.H., he found her to be "very credible" and "a very compelling witness," and that he discussed the implications of this with Juntunen. VTP (Feb. 14, 2014) at 46.

4

Baum further testified that he met with the prosecutor "a number of times" on "multiple occasions to try to get [the prosecutor] to give up on [the aggravators], with some other form of resolution, but [the prosecutor was] unwilling to do that." VTP (Feb. 14, 2014) at 42, 43. After his investigation, meetings with the prosecutor, and meetings with Juntunen:

> I thought it . . . was [a] high likelihood he would be convicted, because I couldn't find a decent defense[;] then the risk of a tremendous sentence weighed on me[,] and he and I talked about this at great length.
>
> . . . .
>
> . . . I've seen this Court hand out 300, 400, 500, 600 month sentences without a problem, and I think in this instance this type of case is the type of case that shocks the conscience more than almost any other type.
>
> Most of these child rapes, child molestations are oftentimes a family friend or a parent, somebody who takes advantage of an opportunity, but there's not a situation where a child is taken and secreted away by threat of weapon and bodily injury and then a sexual attack forced upon them, and I think a jury would have found aggravators. I think the jury would have found it was predatory, and I think [the] judge would have reacted to those findings giving a sentence extraordinarily or substantially more than 25 years to life that he ended up ultimately pleading to.
>
> . . . .
>
> . . . One of the reasons we pled this way, the child molestation, is it was consistent with behavior that Mr. Juntunen himself admitted to me that he had done, so he didn't have to admit to something that was alleged, the child rape or Rape 1st. He admitted to something that he agreed he had actually done. Possibly he could get better good time, because child molestation is a serous [sic] offense not a serious violent [offense]. As relates to the possibility of good time, he would possibly get better good time on a violent offense than a serious violent offense, so anyways because yeah we talked quite a bit about the sentencing.

VTP (Feb. 14, 2014) at 49-51.

After receiving the evidence and hearing argument, the superior court denied Juntunen's motion to withdraw his guilty plea and entered written findings of fact and conclusions of law. Juntunen appeals.

ANALYSIS

A.     STANDARD OF REVIEW

We review the denial of a motion to withdraw a guilty plea for abuse of discretion. *State v. A.N.J.*, 168 Wn.2d 91, 106, 225 P.3d 956 (2010). Ineffective assistance of counsel claims present mixed questions of law and fact, and are reviewed de novo. *Id*. at 109.

A superior court abuses its discretion when it bases its decision on untenable grounds or reasons. *State v. Pugh*, 153 Wn. App. 569, 576, 222 P.3d 821 (2009). Under CrR 4.2(f), "the trial court [shall] allow a defendant to withdraw his guilty plea 'whenever it appears that the withdrawal is necessary to correct a manifest injustice.'" *Id.* at 577 (quoting CrR 4.2(f)). "'Manifest injustice' means 'an injustice that is obvious, directly observable, overt, [and] not obscure.'" *Id.* (alteration in original) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)). One indication of manifest injustice is ineffective assistance of counsel. *Pugh*, 153 Wn. App. at 577. "Because of the many safeguards that precede a guilty plea, the manifest injustice standard for plea withdrawal is demanding." *Id.* (citing Taylor, 83 Wn.2d at 596).

B.     SUFFICIENT FACTUAL BASIS

Juntunen first challenges four findings of fact made by the superior court. He argues findings of fact 1.2, 1.3, 1.20, and 1.32 lack evidentiary support. We hold there is sufficient evidence in the record to support the challenged findings of fact.

We review challenged findings of fact to determine whether the findings are supported by substantial evidence; substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the findings' truth. *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). Unchallenged findings of fact are verities on appeal. *State v. Bonds*, 174 Wn. App. 553, 562, 299

P.3d 663, *review denied*, 178 Wn.2d 1011 (2013). The party challenging the findings bears the burden to show that substantial evidence does not support the superior court's findings. *A.N.J.*, 168 Wn.2d at 107. Findings of fact that contain errors are subject to a harmless error analysis. *State v. Banks*, 149 Wn.2d 38, 43-46, 65 P.3d 1198 (2003). An error is harmless when it appears beyond a reasonable doubt that the challenged error did not contribute to the result. *Id.* at 44.

      1.     Finding of fact 1.2

Juntunen challenges finding of fact 1.2, claiming that the content of this finding should not be accepted as true because it relies on hearsay within hearsay and there is nothing in the record to support his having "'rubbed' the victim's vagina." Br. of Appellant at 17. This challenge fails.

First, with respect to Juntunen's assertion that the finding is insufficient because it relies on hearsay within hearsay, he provides no argument on the point and the only authority he cites is a "*see id.*" cite to *A.N.J.*, 168 Wn.2d at 107, with no explanation of *A.N.J.*'s application. *A.N.J.* does not support Juntunen's assertion because "hearsay within hearsay" was not an issue or even discussed in *A.N.J.* Br. of Appellant at 17; *see generally A.N.J.*, 168 Wn.2d 91. Thus, Juntunen provides no legal support for his assertion.

Second, the finding that Juntunen ordered her to the bathroom and "rubbed" the victim's vagina is supported by the record. For example, the affidavit regarding probable cause states:

> She stated the male subject told her he had a knife and ordered her to go into the bathroom . . . the male subject began to rub his hand over the top of her front privates . . . also known as the vagina . . . [T]he male subject then put something on her. . . . When asked where the male subject put this substance, S.E.H. looked down and stated on her front privates.

CP at 9-10. Also, the presentence investigation states that "[s]he was approached by a man, later identified as Juntunen, who . . . directed her to enter the bathroom. . . . He pulled her pants down

around her knees and began rubbing her vaginal . . . area."[4]  CP at 47.  Further, Baum, testified

that:

> Mr. Juntunen right off the bat told me what happened and how this thing played out. . . . He saw the little girl, . . . took her into the bathroom like pushed her down onto the ground, held her clothes out of the way and rubbed his penis on her buttocks area."

VTP (Feb. 14, 2014) at 44.  Thus, substantial evidence supports the superior court's finding of fact

1.2, and we hold that Juntunen's challenge fails.

> 2.      Finding of fact 1.3

Juntunen challenges finding of fact 1.3, claiming that the record does not support the

superior court's finding that Juntunen "put something on [S.E.H.]'s vagina."  Br. of Appellant at

17 (quoting CP at 185).  Juntunen's argument fails.

The affidavit regarding probable cause states:

> She [S.E.H.] stated . . . that the male subject then put something on her[.]  When asked what it was, she stated she did not know, but stated it was white like lotion and felt warm.  When asked where the male subject put this substance, S.E.H. looked down and stated on her front privates

CP at 10.  The presentence investigation report states:  "Juntunen ejaculated inside her and on

S.E.H.'s vaginal and buttock area."  CP at 47.  Also, unchallenged finding of fact 1.11 states that

Juntunen admitted to his attorney that he forced S.E.H. into the bathroom, "had sexual contact with

her and then ejaculated on her."  CP at 185.  Because the record and unchallenged findings of fact

---

[4] The presentence investigation report relies on the affidavit of probable cause for the facts it sets forth.  "By failing to object to the information contained in the presentence report or to demand an evidentiary hearing to refute that information, this Defendant acknowledged that he was unable to controvert the facts set forth in the report."  *State v. Garza*, 123 Wn.2d 885, 891, 872 P.2d 1087 (1994).

are sufficient to persuade a rational person of the truth of finding of fact 1.3, we hold Juntunen's challenge fails.

     3.     Finding of fact 1.20

Juntunen challenges finding of fact 1.20 only insofar as to the superior court's inclusion of the word "strategically," claiming that it is a conclusion of law that this court should review de novo. Br. of Appellant at 17. Finding of fact 1.20 states:

> Baum strategically decided against obtaining a DNA expert, which based on defendant's admission, Baum believed would only corroborate the State's case against his client.

CP at 186.

We hold that Juntunen's challenge fails because this finding of fact is supported by other unchallenged findings. Finding of fact 1.18 is not challenged and states, "Baum conducted interviews with the Washington State Patrol Crime lab and other DNA experts. Baum was unable to discover any legal issues regarding collection, custody or testing of the DNA evidence in this case." CP at 186. Because the trial court expressly found that the attorney decided against obtaining a DNA expert after the attorney was unable to discover, after several interviews with experts in the field, any legal issues with the collection, custody, or testing of the DNA evidence. Therefore, substantial evidence supports the superior court's finding that the attorney's decision was "strategic," and Juntunen's challenge to finding of fact 1.20 fails.

     4.     Finding of fact 1.32

Juntunen challenges finding of fact 1.32, claiming that it lacks support in the record. Finding of fact 1.32 states:

> Defendant did not present any evidence beyond the self-serving allegations of his mother to show that his guilty plea was not voluntarily made.

CP at 187.

Juntunen did not file any declaration in support of his motion to withdraw his guilty plea to demonstrate that he did not understand the plea, did not know what he was doing, or proceeded involuntarily. Also, unchallenged finding of fact 1.29 states that "[o]n December 10, 2014, the defendant filed a Motion to Withdraw his Guilty Plea, which was not supported by any evidentiary documentation or declarations." CP at 187. Further, unchallenged finding of fact 1.31 states that "[d]efendant did not submit a declaration or testify at the hearing." CP at 187. Because neither findings of fact 1.29 nor 1.31 are challenged, they are verities on appeal. Thus, Juntunen's claim that substantial evidence does not support finding of fact 1.32 fails.

C.      EFFECTIVENESS OF COUNSEL

Juntunen argues his guilty plea was invalid because he received ineffective assistance of counsel. Specifically, Juntunen argues his counsel was ineffective because counsel did (1) not negotiate a better plea deal; (2) not exploit inconsistences in the victim's story; (3) not hire a DNA expert; (4) not meet with Juntunen 14 times; and (5) serve as a city prosecutor in the same county while representing Juntunen.

To establish ineffective assistance resulting in a guilty plea, the defendant must show (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) he or she was prejudiced by the deficient performance. *State v. Sandoval*, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

"In a plea bargaining context, 'effective assistance of counsel' merely requires that counsel 'actually and substantially [assist] his client in deciding whether to plead guilty.'" *State v. Osborne*, 102 Wn.2d 87, 99, 684 P.2d 683 (1984) (alteration in original) (quoting *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901, *review denied*, 96 Wn.2d 1023 (1981)). And, in the plea bargaining context, the prejudice prong requires a showing that but for counsel's errors, it is reasonably probable the defendant would not have pleaded guilty and would have insisted on going to trial. *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993).

1.      Negotiating the Plea

Juntunen argues his counsel was ineffective by failing "to negotiate a better deal." Br. of Appellant at 22. Specifically, Juntunen claims that counsel failed to file "motions to attack the legality of the aggravator" and "present any mitigating evidence." Br. of Appellant at 21. We disagree.

First, Juntunen does not provide any argument as to how the "legality" of the predatory aggravator could be attacked by Baum; nor does Juntunen provide any indication of what sort of mitigating evidence Baum could have presented. This is likely because Juntunen's admission to Baum was consistent with the statutory definitions of the crime of child molestation and predatory aggravator.

Baum testified that Juntunen admitted to him "right off the bat" that he had committed the conduct alleged in the child molestation charge with a predatory aggravator. VTP (Feb. 14, 2014) at 44. "A person is guilty of child molestation in the first degree when the person has . . . sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). To be

11

"predatory" means that the "perpetrator of the crime was a stranger to the victim," where being a "stranger" means "that the victim did not know the offender twenty-four hours before the offense." RCW 9.94A.030(39), (51).

Here, Baum testified that Juntunen said, "He saw the little girl, took her into the bathroom, . . . and rubbed his penis on her buttocks." VTP (Feb. 14, 2014) at 44. Baum also explained the reasoning behind recommending that Juntunen accept this particular plea—the plea did not require Juntunen to admit to anything he had not admitted to doing and child molestation was a serious offense, not a serious violent offense, so Juntunen would have a better possibility of getting good time served credits Given Juntunen's failure to present a substantiated contrary argument, Juntunen's admission, and Baum's explanation, we hold that Baum was not deficient in representing Juntunen in plea negotiations with the State.

Additionally, the superior court found in finding of fact 1.15 that "Baum met with the Deputy Prosecutor on several occasions on behalf of his client, but was unable to negotiate a plea to a lesser charge, which may have resulted in a lesser sentence." CP at 186. This finding is unchallenged and is a verity on appeal. *Bonds*, 174 Wn. App. at 562. Therefore, we hold Juntunen's argument that his counsel was deficient for not negotiating a better plea fails.

2.      Exploiting Inconsistencies

Juntunen argues his counsel was ineffective for failing to "exploit[] the inconsistencies in the victim's statements and argue[] that no molestation occurred." Br. of Appellant at 22. In his briefing, Juntunen does not identify what inconsistencies he is arguing that his attorney was ineffective for failing to exploit.

Juntunen's claim fails because he does not provide "references to relevant parts of the record" demonstrating the inconsistencies he now alleges his attorney was deficient for failing to raise. RAP 10.3(a)(6). Moreover, Juntunen does not provide argument as to how he was prejudiced by Baum's alleged failure. Failure to establish prejudice is fatal to Juntunen's ineffective assistance of counsel claim here. *Strickland*, 466 U.S. at 687; *see also Cameron*, 30 Wn. App. at 232 ("Defendant argues generally that his counsel did not thoroughly investigate the case. Without specific allegations which would, if believed, demonstrate resulting prejudice, the plea is not vitiated.").

### 3. Hiring a DNA Expert

Juntunen argues his counsel was ineffective for failing to hire a DNA expert. We disagree.

The unchallenged findings of fact and conclusions of law establish that Baum's failure to hire a DNA expert was a legitimate trial strategy. Finding of fact 1.18 states that, "Baum conducted interviews with the Washington State Patrol Crime lab and other DNA experts. Baum was unable to discover any legal issues regarding collection, custody or testing of the DNA evidence in this case." CP at 186. Conclusion of law 2.2 states that, "Baum's decision to not use a DNA expert was legitimate trial tactics and did not fall outside the wide range of professionally competent assistance." CP at 187. Unchallenged findings are verities on appeal. *Bonds*, 174 Wn. App. at 562. Therefore, Juntunen's claim fails.

### 4. Meeting with Juntunen

Juntunen argues his defense counsel was ineffective for "only visit[ing] Mr. Juntunen a total of 10 times, not 14 as Baum swore in his declaration." Br. of Appellant at 24. This argument fails.

"The alleged infrequency or brevity of counsel's meetings with defendant is not enough to demonstrate ineffective assistance of counsel." *Cameron*, 30 Wn. App. at 232. Failure to establish either deficient performance or resulting prejudice is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 687. Here, Juntunen's argument fails because he does not provide any argument or citation to establish that Baum's 10 visits constituted deficient performance, nor that he was prejudiced by Baum visiting him 10 times and not 14.

5.      Conflict of Interest

Juntunen argues that because Baum was a prosecutor for the city of Vader in Lewis County while representing Juntunen, there was an "actual conflict of interest" that "constitutes ineffective assistance of counsel per se." Br. of Appellant at 45-46 (capitalization omitted). We disagree.

The same argument that Juntunen now raises was rejected in *State v. Tjeerdsma*, 104 Wn. App. 878, 17 P.3d 678 (2001). In *Tjeerdsma*, the defendant, who was tried in Skagit County, was represented by an attorney who was also a prosecutor for the city of Mount Vernon in Skagit County. 104 Wn. App. at 881. On appeal, the defendant argued that reversal of his conviction was required because his counsel's position as a prosecutor for the city of Mount Vernon presented an "actual conflict of interest" that denied him effective assistance of counsel. *Id*. at 882. Division One rejected the argument. *Id*. at 883. The court reasoned that the record did not show that the attorney, as a municipal prosecutor, owed a duty to anyone whose interests were adverse to the defendant's; as the municipal prosecutor, the attorney's client was the city of Mount Vernon, and the defendant had not demonstrated that the city's interests were in actual conflict with respect to a legal or factual issue in his case. *Id*. at 883-84.

14

No. 46110-2-II

The same reasoning applies to Juntunen's arguments. Here, the record does not show that Baum, as a prosecutor for the city of Vader in Lewis County, owed a duty to anyone whose interests were adverse to Juntunen's; as a prosecutor, Baum's client was the city of Vader. Therefore, we hold that Juntunen's argument that Baum's role as a prosecutor for the city of Vader constituted an "actual conflict of interest" fails.

We affirm the superior court's denial of Juntunen's motion to withdraw his guilty plea.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, J.

_____
Johanson, C.J.

15