# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Respondent,

v.

TIMOTHY WILLIAM BRADFORD,

Appellant.

No. 80624-6-I

DIVISION ONE

UNPUBLISHED OPINION

APPELWICK, J. — Bradford appeals the trial court's denial of his motion to withdraw his guilty plea. He argues the plea was not knowing, intelligent, or voluntary, and that he received ineffective assistance of counsel. We affirm.

FACTS

The State charged Bradford with one count of indecent liberties by forcible compulsion. The parties struck a plea deal whereby Bradford would plead guilty to the lesser charge of second degree assault with sexual motivation.

The initial plea hearing occurred on April 12, 2019. Prior to the hearing, Bradford signed a statement of the defendant on plea of guilty.[1] At the initial plea hearing, Bradford disclosed to the court that he was hard of hearing. The court ensured that Bradford could hear, then said, "If at any point during the hearing today you cannot hear anybody at any given time, you raise your hand or stop us

---

[1] That statement correctly indicated that the maximum term for the new charge was life in prison and a $50,000 fine. The State's sentencing recommendation did not include a maximum term or otherwise indicate that a life sentence was the maximum term.

right away." The court periodically asked Bradford if he was able to hear during the hearing.

The court proceeded to review the statement of the defendant on plea of guilty with Bradford. Before proceeding, the court said, "If at any point you can't hear or understand what I've said, you stop me right away." Bradford responded, "Okay." The two had the following exchange:

> THE COURT: All right. So the first thing, did you and [defense counsel] go through this document completely together?
>
> [Bradford]: Yes.
>
> THE COURT: And if you had any questions, did she answer them for you? If you had a question, I don't understand this part, did she clarify that for you?
>
> [Bradford]: Yes.

After confirming Bradford's biographical information, the court proceeded:

> THE COURT: At the bottom of that same page, paragraph 6 indicates that the charge carries a maximum penalty of life imprisonment and 50,000-dollar fine with a standard range based on your criminal history of from 15 to 20 months in custody. The sexual motivation adds 24 months consecutive to your standard range. Do you understand that?
>
> [Bradford]: Yes.
>
> THE COURT: All right.
>
> [Bradford]: So it'd be 44 months.
>
> THE COURT: Well, I'm not sure what the recommendation is, but we'll get to that. But your standard range is 15 to 20. And in addition to whatever you get, you will add 24 months for sexual motivation.
>
> [Bradford]: Oh.
>
> THE COURT: You understand?

2

[Bradford]: Yes.

. . . .

THE COURT: And do you understand that this particular charge falls within what's called the indeterminate sentencing, which means that you have a standard range, but at the conclusion of that, your case will be reviewed to see if it's safe enough for you to be released; do you understand that?

[Bradford]: Yes.

THE COURT: And do you understand that that could include potentially holding you in custody for the rest of your life?

[Bradford]: Yeah.

THE COURT: All right.  Any questions about that?

[Bradford]: Well, I'm thinking I should go --

THE COURT: Do you need just a -- Mr. Bradford, do you need just a minute to talk to [defense counsel]?

[Bradford]: Well, I'm just --

THE COURT: Well why don't you step back just a little bit from the bar, and I'll give you a chance to visit with her for just a moment.

After consulting with counsel, Bradford declined to enter a plea.  A follow up hearing was scheduled for the following Tuesday.

The next plea hearing was held on April 19, 2019.  The court began by ensuring Bradford could hear the proceedings.  Bradford responded that he had his hearing aids in and was able to hear the proceedings.  The court again advised Bradford that if he could not hear anything that was said, he could stop the hearing. The court had the following exchange with Bradford:

THE COURT: All right.  So Mr. Bradford, you and I were -- and everybody were here last week or so, and you had some additional questions for your counsel.  Did you get all of your questions answered?

[Bradford]: Every one of them.

THE COURT: Okay. So I have been handed this form called the statement of Defendant on plea of guilty. You have a copy in front of you. I'm going to ask you a number of questions about the document, and I'd like you and your lawyer to follow along on your copy. Do you understand, sir? Do you understand what we're going to do today?

[Bradford]: Yes. I understand, sir.

THE COURT: All right. So the first thing, did you and your counsel go through the statement form completely together? Did you read through that with your lawyer?

[Bradford]: I understand. Right.

THE COURT: Mr. Bradford, listen to my questions. And if you can't hear them, you let me know. My first question is did you and your lawyer read through your statement form together?

[Bradford]: Yes, we did.

The court proceeded to verify Bradford's biographical information and ensure he was aware the rights he was giving up by pleading guilty. The exchange continued:

THE COURT: At the bottom of the same page, paragraph 6 indicates that the charge carries a maximum penalty of life imprisonment and a 50,000-dollar fine with a standard range, based on your criminal history, from 15 to 20 months in custody. The enhancement carries an additional 24 months consecutive to your standard sentence. Do you understand the penalties?

[Bradford]: Yes, sir.

THE COURT: And do you understand that even if you complete the entire sentence, that you would then be subject to a hearing to determine if it was safe for you to be released into the general public?

[Bradford]: I'll never have the kind of money you're talking about.

THE COURT: Well do you understand that even if you serve your standard sentencing range and complete it, that at that point there would be an additional hearing to see if you were safe to be released into the general public?

[Bradford]: Oh yeah.  Yeah.

THE COURT: And do you --

[Bradford]: Well I'll just go ahead and do it my life.  Yeah.  Just give me life.

THE COURT: Well, do you understand that that is a possibility if they find that you are not safe to be released?

[Bradford]: Oh okay.

THE COURT: Do you understand that?

[Bradford]: Yeah, I understand it all.

Bradford went on to plead guilty to second degree assault with sexual motivation at the hearing.  Prior to accepting the plea, the court again asked Bradford if he had any trouble hearing at the proceeding.  Bradford replied, "Not at all."

At sentencing, Bradford sought to withdraw his plea.  In light of this, his attorney withdrew from representation.  Bradford informed the court that his hearing impairment made him unable to understand his attorney, that he did not understand his rights.  He indicated he wanted a new attorney and to go back to his original charge.

Bradford was provided another attorney and advised that attorney that he wished to plead guilty to assault in the second degree with sexual motivation. Another sentencing hearing was held.  At that hearing, Bradford again indicated that he wished to withdraw his guilty plea.  He said that he could not understand his previous attorney and that she had told him prior to his plea hearing to just say yes to everything that was said.  He indicated that he was confused and wished to exercise his right to face his accuser.  The court set another hearing to investigate

the withdrawal of his plea. His substitute counsel subsequently withdrew from representation. Bradford then filed a formal motion to withdraw his guilty plea.

The court held a hearing to consider Bradford's motion. Bradford testified in support of his own motion. He testified that he was born with a hearing impairment that made it difficult for him to comprehend vowel sounds. He said that this might make him comprehend only 60 percent of the words said to him. He claimed to have developed a tendency to agree with things he did not understand.

Bradford further testified that prior to his first plea hearing, his previous attorney told him she could not represent him at a jury trial. He said that she insisted on a plea deal even though he told her he did not want one and instead wanted to go to trial. He testified that she did not go over written documentation with him and told him to just say yes to everything the court asked him. He said that he again told her that he did not want to plead guilty. He said she conveyed these messages again prior to his second plea hearing. He later indicated that he was unaware he was at a plea hearing due to issues with his thyroid medication. He did not express that he was confused about his sentence specifically or express that he thought his release was contingent on his ability to pay fines.

Bradford's original plea counsel testified next. She testified that she conducted discovery, went over the evidence with Bradford, and asked for his input. She said they discussed the possibility of trial and plea negotiations. She testified that she discussed the plea agreement with Bradford, including the sentence. She perceived that Bradford was comfortable asking questions and that they had adequate communication and an uncontentious relationship. She

6

testified that Bradford told her that he wanted to accept the plea deal. She further testified that she told him that he had the option to go to trial and that she would represent him at trial if he chose to do that.

Bradford's original plea counsel further testified that she went over paperwork related to the plea deal with Bradford. She said she perceived him to be comfortable asking questions and that she was able to answer his questions. She denied telling him to just say yes to the questions asked at the hearing.

The trial court denied Bradford's motion to withdraw his plea. It specifically found that Bradford's original plea counsel's testimony was credible, and that Bradford's testimony was not. The trial court sentenced Bradford to 44 months with an indeterminate life sentence.

Bradford appeals.

## DISCUSSION

Bradford argues that his plea was not knowing, intelligent, and voluntary. He argues that he was confused about whether his release from prison was contingent on his ability to pay a $50,000 fine. He argues the trial court failed to ensure he understood the consequences of his plea and erred in denying his motion to withdraw the plea. He further argues that he received ineffective assistance of counsel because his attorney did not ensure his plea was knowing, intelligent, and voluntary.

I. The Court

A guilty plea constitutes a waiver by the defendant of several important constitutional rights. Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L.

7

Ed. 2d 274 (1969). Prior to accepting a defendant's guilty plea, a court must affirmatively ensure the defendant knowingly, intelligently and voluntarily waived those rights. Id. at 242-43. The court must ensure that the defendant understands the permissible range of sentences. Id. at 244 n.7.

That a defendant signs a plea contract is strong evidence that a plea is voluntary. State v. Branch, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). When the trial court inquiries into the voluntariness of the plea on the record, we presume a plea is voluntary. State v. Pugh, 153 Wn. App. 569, 577, 222 P.3d 821 (2009).

CrR 4.2(f) requires a trial court to allow a defendant to withdraw their guilty plea if it is necessary to correct a manifest injustice. A manifest injustice is shown by (1) ineffective assistance of counsel, (2) the defendant not ratifying the plea, (3) the plea being involuntary, or (4) the prosecutor not honoring the plea agreement. Pugh, 153 Wn. App. at 577. The manifest injustice standard is demanding. Id. The defendant has the burden of showing a manifest injustice that is "obvious, directly observable, overt, [and] not obscure" has occurred. State v. Turley, 149 Wn.2d 395, 398, 69 P.3d 338 (2003).

The trial court's factual findings are reviewed for substantial evidence. State v. A.N.J., 168 Wn.2d 91, 107, 225 P.3d 956 (2010). We review the trial court's order on a motion to withdraw a guilty plea for abuse of discretion. State v. Lamb, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). A trial court abuses its discretion if its decision is manifestly unreasonable or base on untenable grounds or reasons. Id.

Here, Bradford argues that his plea was not voluntary because he did not understand his sentence. Specifically, he says he believed that he would not be

8

released from prison if he was unable to pay a $50,000 fine. He points to the following exchange:

> THE COURT: At the bottom of the same page, paragraph 6 indicates that the charge carries a maximum penalty of life imprisonment and a 50,000-dollar fine with a standard range, based on your criminal history, from 15 to 20 months in custody. The enhancement carries an additional 24 months consecutive to your standard sentence. Do you understand the penalties?
>
> [Bradford]: Yes, sir.
>
> THE COURT: And do you understand that even if you complete the entire sentence, that you would then be subject to a hearing to determine if it was safe for you to be released into the general public?
>
> [Bradford]: I'll never have the kind of money you're talking about.
>
> THE COURT: Well do you understand that even if you serve your standard sentencing range and complete it, that at that point there would be an additional hearing to see if you were safe to be released into the general public?
>
> [Bradford]: Oh yeah. Yeah.
>
> THE COURT: And do you --
>
> [Bradford]: Well I'll just go ahead and do it my life. Yeah. Just give me life.
>
> THE COURT: Well, do you understand that that is a possibility if they find that you are not safe to be released?
>
> [Bradford]: Oh okay.
>
> THE COURT: Do you understand that?
>
> [Bradford]: Yeah, I understand it all.

Bradford argues this exchange shows that he was confused about how his ability pay the fine would affect his ability to secure release at the end of his minimum term. We disagree.

At best, the exchange shows Bradford expressing his inability to pay the maximum fine. Bradford never expressed that he believes this will affect his release. When the trial court reaffirms that his release is contingent on a hearing to determine whether he is safe to be released, Bradford acknowledges he understands that and does not express a concern about an inability to pay keeping him incarcerated even if he was deemed safe for release. During his testimony on his motion to withdraw his guilty plea, Bradford never says that he was confused about how his ability to pay the fine would affect his sentence.

At the plea hearing, the trial court affirmatively inquired as to Bradford's understanding of his plea and its voluntariness. It specifically inquired as to Bradford's understanding that he was giving up rights by pleading guilty. It ensured that Bradford had an opportunity to review forms with his attorney before signing, and that he was not threatened or coerced. It ensured that Bradford could properly hear the proceedings and encouraged him to halt the proceedings if he could not. It again confirmed Bradford's ability to hear before accepting his plea.

At the hearing on the motion to withdraw the plea, the trial court specifically inquired with the State as to Bradford's understanding of his sentence. It specifically considered whether Bradford's statements, combined with the inconsistency concerning the maximum sentence as noted in the statement of defendant on plea of guilty and the sentencing recommendation, could mean that

he did not understand his sentence. But, it found any potential confusion was overcome by the fact that counsel went over the statement of the defendant on plea of guilty with him before he signed it.[2] It therefore found that the plea was voluntary and declined the motion. This decision was not manifestly unreasonable and was not an abuse of discretion.

## II. Ineffective Assistance of Counsel

Bradford argues he received ineffective assistance of counsel because his plea counsel did not ensure that he understood his sentence. Specifically, he argues counsel should have intervened at the plea hearing when he expressed confusion about his sentence.

The Sixth Amendment to the United States Constitution guarantees a defendant receives effective assistance of counsel at critical stages in the proceeding, including when he enters a guilty plea. Lee v. U.S., ___ U.S. ___, 137 S. Ct. 1958, 1964, 198 L. Ed. 2d 476 (2017). To establish ineffective assistance of counsel, Bradford must show that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the performance. Id. Prejudice can be demonstrated by showing a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. Where the defendant alleges that counsel's deficient performance led him to accept a guilty plea, a defendant can show prejudice by

---

[2] That finding is supported by substantial evidence. See A.N.J., 168 Wn.2d at 107. Bradford testified this did not occur. His counsel testified that it did. The trial court found counsel's testimony was credible and Bradford's was not. The trial court had previously confirmed that the two had gone over the forms before accepting Bradford's plea.

showing a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. Id. We review ineffective assistance of counsel claims de novo. State v. Wafford, 199 Wn. App. 32, 41, 397 P.3d 926 (2017).

Bradford argues that counsel was deficient for not intervening at the prehearing despite his confusion over his sentence. Bradford's counsel went over the plea agreement with him prior to the plea hearing. As noted above, the exchange between Bradford and the court regarding his sentence did not evidence confusion regarding the sentence. Any confusion that may have been present was cleared up by the trial court asking twice if Bradford understood the sentence. Bradford twice confirmed his understanding. It was therefore objectively reasonable not to intervene because there was no confusion sufficient to justify an intervention. Counsel's performance was not deficient.

We affirm.

_Appelwick, J._

WE CONCUR:

_____

_Andrus, A.C.J._